## CAR FORREST v. H. H. RAWLINGS.

1. Defendant appealed from a judgment rendered against him on a draft, but the statement of facts neither sets out the draft nor contains any evidence of any liability of the defendant to the plaintiff. This court would reverse the judgment, and also dismiss the cause, but for the strong probability that the defects in the statement of facts are results of a mistake either of the attorneys or of the district clerk; in view of which probability the cause will be remanded instead of dismissed.

2. The payee of a sight draft brought suit against the drawer to the third term of the court after the date of the draft, but the petition did not allege that any notice of the non-payment of the draft had been given to the defendant. Exceptions for insufficiency were taken to the petition in the district court. *Held*, that for want of such averments of notice the petition states no cause of action, and the exceptions should have been sustained.

APPEAL from Ellis. Tried below before the Hon. Hardin Hart.

The draft sued on was for $500, drawn by Forrest, in favor of Rawlings, dated February 24, 1869, directed to W. C. Richards, of Ellis county, Texas, and payable at sight.

The petition was not filed until the twenty-second of July, 1870. It alleged a presentation of the draft to Richards, for payment, on the first of March, 1869, and that he failed and refused to pay it; but that afterwards, on the eleventh of March, 1870, he made a partial payment on it of two hundred and forty dollars. No notice of non-payment was alleged to have been given to the defendant, Forrest.

*A. Bradshaw*, for the appellant.

*A. A. Kemble*, for the appellee.—In this case we have nothing to do with the rights of any acceptor or in-

dorser of the instrument sued upon. The rights of the drawer and payee alone are involved.

It is further to be noticed that the instrument sued upon is payable "on sight," and therefore was not to be presented for "acceptance," but for "payment." On failure to pay when presented, the right of action accrued to plaintiff, the payee, immediately. (O. & W. Digest, Art. 96; 14 Texas Reports, 16.)

Particular attention is called to the language used in Oldham & White's Digest, Article 94. It will be seen that the bringing of suit to the first or second term of the court has special reference to suit against the acceptor of the bill of exchange. In this case there is no such "acceptor." Careful attention to the language of this article is requested.

It will further be seen that Article 96, Oldham & White's Digest, has no reference to a case like this. That article, in its first clause, refers to bills not accepted when presented for acceptance. This instrument did not need to be presented for acceptance, but for payment. It is payable at sight.

Thus it will be seen that the instrument sued upon, whether it be technically a "bill of exchange," a "draft," or an "order," is not meant nor included in Article 94, nor Article 96, Oldham & White's Digest.

If the instrument is included in the terms of Artice 97 (which is more than doubtful), it must be remembered that Article 97 only confers the privilege, does not require that mode,—protest and notice.

And this privilege being "conferred," or retained perhaps, it became a right which the holder of the bill might exercise. Why did not the plaintiff exercise this right? We answer, first, that it was wholly unnecessary, as we understand the statute, looking to the other two articles referred to. And second, we answer, that from

the twenty-fifth of April, 1869, to the filing of this suit, there was no notary public in Ellis county, where the drawer and payor lived.

It will be judicially known to the court that every notary public, and all other officers of Ellis county, went out of office on the twenty-fifth of April, 1869, by reason of their failure to comply with the terms of the proclamation or general order of General Reynolds. It will further be judicially known that there was no appointment and qualification of notaries public for Ellis county until long since the commencement of this suit. Even if the payee of the bill might have, or ought to have had, his bill protested, is he not excused when the law furnished him no officer before whom or by whom the act could be performed? He could not require a notary public to come from another county, even if his act would have been legal when performed in this county.

But it is contended that plaintiff should have brought his suit to the first term of the court, or to the second term with reasons for not bringing suit to the first. We answer, that even if this position were correct, the plaintiff has done all that could be required at his hands. What are the facts in this respect? The order shows that it was drawn upon a man living in Ellis county, Texas. The petition shows that the payee lived in Kentucky; the order was drawn on the twenty-fourth of February, 1869. On the twenty-fifth of April, just two months afterwards, our district clerk went out of office. Would it be expected that the order should reach the payee in Kentucky, return to Texas, demand be made, and suit instituted in two months after it was drawn? And especially when there was still ample time to bring the suit at the first term to be held after drawing of the order, to-wit, fourth Monday in August, 1869. Now, we have

seen that the clerk went out of office April 25, 1869. When did the new clerk under General Reynolds's, or Governor Pease's, appointment qualify? The official bond of E. D. Ayres, who was the clerk appointed, shows that he qualified and became clerk on the twenty-fourth of August, 1869, which may be seen in the office of the Secretary of State. Now, the Summer term should have been held fourth Monday in August, 1869; but there being no clerk, no papers could be filed—no business of any kind could be done. Conseqently, no court was held. It is not intended to intimate that the Supreme Court can judicially know that no court was held; but only that the court must judicially know that the former clerk, J. T. Alexander, went out of office April 25, 1869, and that E. D. Ayres was the successor, and qualified August 24, 1869; and the court must also judicially know the regular terms of the district courts. The next term should have been the second Monday after second Monday in February, 1870. But an election for members of the Legislature had been ordered, which took place the last of November and first of December, 1869. The Legislature had met and adopted the present Constitution before the time of the February term, and this, we hold, displaced all the district judges, and among them Judge A. B. Norton, of this district. So Judge Norton understood, himself, and held no court here. Such was the almost universal opinion of the bench and bar of Texas.

The next term of the district court was the fourth Monday in August, 1870, and to that term this suit was brought; which was, in fact, the first term to which suit could have been brought.

That the displacement of the district clerk, and qualification of the new clerk, and the like as to the judge and notaries public, are matters to be taken judicial notice

of by the court. (See 1 Greenleaf on Evidence, §§ 4, 5, 6; 11 Texas Reports, 690, Ogden v. Lund; 9 Texas Reports, 348, Robertson v. Teal; Id., 372, Wheeler v. Moody.)

OGDEN, J.—Taking the certified statement of facts presented in the record of this cause as a true and correct statement of all the material evidence produced on the trial, we do not hesitate to say that the judgment is contrary to the law and the evidence, and that the court erred in overruling the motion for a new trial. The suit was brought on a certain draft, which was set out and made a part of the petition; but the statement of facts contains no such draft, and no evidence that such a draft ever existed; nor, indeed, does it contain any evidence whatever of any indebtedness or liability of defendant to the plaintiff for any sum; and we should be disposed to reverse the judgment and dismiss the cause, but for the strong probability that there was a material error in the parties themselves in preparing a statement of facts, or the officer in making up the transcript; and we therefore will simply reverse the judgment, with the remark that the statement of facts contained in the record of this cause can be the foundation for no legal judgment.

We are also of the opinion that the court erred in overruling the defendant's exceptions to the plaintiff's petition. Certainly the maker of the draft sued on could not be held personally liable, without an allegation and proof that the same had been presented to the drawee for payment; and we are also of the opinion that the maker should have been notified of the dishonor of his draft within a reasonable time. In the case of Carson's Administrator v. Russell & Scott, 26 Texas, 456, the court held that the holder of the draft

was bound to present it for payment when due. The draft sued on in this case was payable at sight, and it was the duty of the holder, not only to present the same for payment within a reasonable time, but also to give the maker notice of the non-payment.

The testimony of Southerland was irrelevant and immaterial, as connected with the issues presented in the pleadings, and for that reason should have been ruled out by the court; but we are unable to see how that testimony could affect the judgment in any manner, and particularly as the whole cause, both of law and facts, was submitted to the court without the intervention of a jury. But for the reasons given, the judgment is reversed and the cause remanded.

Reversed and remanded.